[Civ. No. 13807. Third Dist. Mar. 3, 1976.]

ALICE et al., Plaintiffs and Appellants, v.
DEPARTMENT OF SOCIAL WELFARE et al.,
Defendants and Respondents.

COUNSEL

Charles R. Baumbach, Cecilia D. Lannon, David B. Bryson, Norman S. Nayfach, Burton Danziger, Fred H. Altshuler, Richard Hirsch and Diamond, Savitt & Mellini for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, N. Eugene Hill, Deputy Attorney General, Daniel V. Blackstock, County Counsel (Butte), James R. Griffith, Deputy County Counsel, Douglas J. Maloney, County Counsel (Marin), Thomas G. Hendricks, Chief Deputy County Counsel, Howard E. Gawthrop, County Counsel (Santa Cruz), and A. Terry Slocum, Assistant County Counsel, for Defendants and Respondents.

## OPINION

THE COURT.*—In this action Alice[1] filed a petition for a writ of mandate and a complaint for declaratory relief on behalf of herself and a class of plaintiffs consisting of all female minors "(a) over the age of 15 years, living separate and apart from their parents, and managing their own financial affairs so as to be emancipated within C.C. § 34.6; and (b) eligible for medical assistance and Medi-Cal benefits under the Aid for

---

*Before Regan, Acting P. J., and Janes, J.

[1] The fictitious names "Alice," "Sharon," and "Barbara" have been used by stipulation of the parties, and continued by this court in lieu of the normal party designations, in order to protect the actual identities of the petitioner and plaintiffs in intervention.

Families with Dependent Children program (hereinafter AFDC) since they are needy and deprived within the meaning of applicable federal and state statutes and regulations; and (c) being ·denied access to urgently needed medical care and attention by defendants who rely on the certain state welfare policies and procedures more particularly described below to deny the class eligibility for medical assistance and Medi-Cal. Such class may be divided into: (i) those women whose urgent medical and surgical need is for termination of pregnancy pursuant to the Therapeutic Abortion Act; and (ii) those whose pregnancy will not be terminated and whose urgent need is for prenatal care to protect their health and safety and that of their unborn children."

Barbara and Sharon sought leave to and were granted permission to intervene as members of the class.

The answering defendants are the State Department of Social Welfare (SDSW)[2] (the agency charged with administration of the welfare laws, including the AFDC program), the Director of the State Department of Social Welfare, Marin County Department of Public Services and Butte County Department of Social Welfare.

At trial, judgment was for defendants.

### FACTS

Alice, Barbara and Sharon each applied in their respective counties for AFDC assistance, specifically for medical attention with respect to their pregnancies. Each of them was an unmarried minor over the age of 15 living apart from her parents, and managing her own affairs, so as to be emancipated under Civil Code section 34.6. Each was refused medical assistance (Medi-Cal) in connection with her AFDC application for the reason that she refused to consent to contact being made with her parents by the county welfare authorities. Two of the girls, Alice and Barbara, sought medical aid for a therapeutic abortion and each had qualified for such under the abortion laws. The other girl, Sharon, had not yet determined whether or not she qualified for a therapeutic abortion, but she sought AFDC medical aid to so determine and for prenatal care if she was not certified as qualified for an abortion. None of the girls sought cash grants under AFDC for their general maintenance and support, but

---

[2] Department of Social Welfare has been changed to Department of Benefit Payments; we will use the department's earlier designation throughout this opinion.

only for medical assistance relative to pregnancy under the Medi-Cal program.

The trial court found that Alice, Barbara and Sharon have raised questions in this action of common and general interest to the class they represent as a whole, and that the interests of Alice are identical to those of the other members of the class. The court upheld, however, the practice of the state and various county welfare departments of contacting parents and revealing pregnancies where deemed necessary and of refusing Medi-Cal aid to such applicants who refuse to agree or consent that such parental contact may be made where deemed necessary by the welfare authorities. The practice approved by the trial court was based upon a 1970 directive of the SDSW contained in a letter signed by Robert Martin, then the director of SDSW, and dispatched to the county welfare directors. This directive set forth "guidelines" or requirements to be followed with respect to cases of the type with which we are here concerned. The applicable portion of the directive required the counties to do the following:

"Determine what contribution the minor is in fact receiving from her parents and the unborn child's natural father. Evaluate the amount in light of their *ability* to provide support. Determine ability to support in the manner specified for use in stepfather or absent parent cases, using information supplied by the daughter.

"If the daughter refuses to provide the necessary information, or refuses to give her consent to allow the county to contact her parents or the child's father regarding their obligation to provide support, advise the unwed pregnant minor that she is ineligible for AFDC because she does not meet the conditions set forth in Regulation Sections 44-103.212 and 44-103.23 (Exploration of Income Potentials, Applicant and Recipient Responsibility)."[3] The letter in question was prefaced by a statement correctly making it clear that the AFDC referred to can include Medi-Cal eligibility relating to pregnancy and the unborn child. (See Welf. & Inst. Code, §§ 14005, 14005.1.)

---

[3] The reference to regulation sections 44-103.212 and 44-103.23 are to Eligibility and Assistance Standards (EAS). The two references are to provisions requiring the county to explore potential income to an applicant and providing that the applicant is responsible "for taking all actions necessary to obtain unconditional available income" and that an applicant is ineligible for aid if refusing to accept unconditionally available income. The concept here of course is that the parents or parent of the unwed minor would be contacted to determine their financial ability to assist in support of the unwed pregnant minor.

Alice contends that the procedure or policy of parental contacts applied to her violates Welfare and Institutions Code section 14010. That section of the code was enacted by the Legislature in 1971, a few months after the 1970 directive of the SDSW referred to hereinabove.

Section 14010 reads as follows: "Notwithstanding any other provision of law, the parent or parents of a child under 21 years of age shall not be held financially responsible, nor shall financial contribution be requested or required of such parent or parents for health care or related services to which the child may consent without the need for parental consent under any express provision of law."

It is to be noted that a "child," such as Alice, who was an unmarried pregnant minor, had previously been authorized by the Legislature in statutes enacted in 1953 and in 1968, to consent to medical and surgical care related to her pregnancy. (Civ. Code, §§ 34.5, 34.6.) It is undisputed by any party that a minor may consent to an abortion without parental contact or consent. (See *Ballard* v. *Anderson* (1971) 4 Cal.3d 873, 878 [95 Cal.Rptr. 1, 484 P.2d 1345, 42 A.L.R.3d 1392].)

The trial court held section 14010 inapplicable to persons in Alice's circumstances, because as long as Medi-Cal benefits were tied to AFDC, the applicant's resources must be explored, and among the possible resources are the parents of the applicant.

Alice does not contend that the welfare departments are prohibited by section 14010 or any other law from contacting an emancipated, pregnant minor's parents when such contact is necessary to determine whether she receives or has available financial support from them. She agrees that consent to contact parents may properly be requested of some applicants for medical aid in specific instances where the information supplied by the applicant regarding her eligibility is incomplete, unclear or inconsistent. This is in conformance with state rules. (See EAS 40-157.3.31; EAS 40-157.4.) But even though Medi-Cal for Alice was a part of AFDC, there is no requirement in any federal or state law, or regulation, rule or standard which would require parental contact in an Alice case, because the information Alice supplied was not incomplete, unclear or inconsistent as to her parents. She stated in writing that her father was dead; that her mother was ill and on both welfare aid and Medi-Cal. She also gave her mother's address.

Defendants and respondents explain the SDSW directive as requiring an applicant for any aid (including Medi-Cal abortion aid) to be a needy person and that the consent to check with the parents of the Alice class was for the purpose of determining need. They further claim that section 14010 does not change the AFDC requirements which apply equally to minors and adults, i.e., to be eligible for any aid (including Medi-Cal abortion) they must be eligible for support whether or not it is sought. Defendants and respondents conclude parental contact is essential to determine any income potential for welfare purposes.

Alice's position on appeal in light of the foregoing, and particularly in reference to section 14010, is that the SDSW directive requirement of consent to parental contact as a condition of medical aid where no support money is requested or needed is contrary to the meaning of section 14010. Her reasoning is that (1) she has requested "health care or related services" within the meaning of section 14010; (2) her parents are not liable for *any* financial contribution to such services under that section; (3) there is a specific prohibition against the parents even being *"requested"* to pay or contribute for such services; and (4) it follows that under section 14010 her consent is at most an idle act and the effect of the rule set forth in the SDSW directive is to harass persons in Alice's position into abandoning their applications because of fear or shame of having an ill or impoverished parent know of their condition. There is evidence in the record that this is the actual effect of the directive and that some severe medical problems and traumas have resulted from application of this directive. There was expert testimony of the sometimes devastating effects resulting from lack of medical attention, including attempts at self-abortion.

The trial court concluded that the consent to parental contact required by the directive was not being sought for the purpose of requesting or requiring any payment for Medi-Cal health or related services contemplated by the language of section 14010. ■ The court concluded that Medi-Cal benefits, as tied in with eligibility for AFDC, required that the consent to parental contact be sought to determine whether the parents could or would become financially supportive of their daughter. We disagree with the trial court with respect to situations where there is no question but that *no support money* had been requested.

Section 206 of the Civil Code requires parents to "maintain" children under certain circumstances. That section provides in relevant part: "It is the duty of the father, the mother, and the children of any person in need

who is unable to maintain himself by work, to maintain such person to the extent of their ability. . . . A person who is receiving aid to the aged shall be deemed to be a person in need who is unable to maintain himself by work." However, California's welfare laws do not require consent to parental contact, as demanded by SDSW, as a condition of aid in situations such as those in which we find Alice, Barbara and Sharon. Section 206 is not in conflict with section 14010 of the Welfare and Institutions Code which removes any possibility that health care costs, including medical abortion, are "maintenance" or support. (See *Swoap v. Superior Court* (1973) 10 Cal.3d 490, 502 [111 Cal.Rptr. 136, 516 P.2d 840]; *County of San Bernardino v. Simmons* (1956) 46 Cal.2d 394, 398-400 [296 P.2d 329]; Welf. & Inst. Code, §§ 14008.5, 11350; EAS 43-117, 43-119.) Therefore, the judgment in this case denying the petition for writ of mandate to prohibit application of the SDSW directive to Alice, Barbara, Sharon and their class is erroneous and must be reversed.[4]

Alice raises two contentions involving alleged violations of constitutional rights in the denial of Medi-Cal assistance to her and the class represented by her and by Barbara and Sharon.

We do not reach the constitutional issues raised by plaintiffs for a very fundamental reason. ■ Since we have arrived at a decision to reverse based on a nonconstitutional ground, we are foreclosed by long-established policy and principle set by both the United States and California Supreme Courts that when a decision has been reached to reverse on other grounds the court will not decide a constitutional question raised in the appeal. (*Palermo v. Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 65-66 [195 P.2d 1].)

The judgment is reversed and the trial court is directed to enter judgment granting the peremptory writ and declaratory judgment as prayed for in the complaints filed in this action, and in conformity with this decision.

---

[4]We emphasize that our decision has no bearing on any case in which an emancipated, unwed, pregnant minor applies for AFDC support or maintenance aid *in addition to* medical aid related to her pregnancy.